GILBANE BUILDING COMPANY *et al. vs.* ANTONIO DERUOSI.

JUNE 18, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J.   This case is before us on two appeals taken under the workmen's compensation act, general laws 1938, chapter 300, which were argued together by agreement of counsel.   The first appeal is by the respondent employee from a decree of the superior court entered after a hearing *de novo* on the petition of the employer and its insurance carrier to review the terms of a preliminary agreement of the parties which had been approved by the director of labor.   The superior court granted such petition and entered a decree authorizing termination of payments. Notwithstanding respondent's appeal therefrom, petitioners terminated compensation payments in reliance on the above decree.

Thereupon the respondent filed a petition in the superior court seeking to have the petitioners adjudged in contempt for failing to continue payments under the terms of the preliminary agreement, pending the hearing and disposition of the original appeal before this court. The trial justice who heard this petition entered a decree holding the petitioners in contempt and permitting them to purge themselves by resuming payments from the date of their discontinuance. From this decree the petitioners have duly appealed, and this second appeal will now be considered.

We are of the opinion that this case is governed by the law as stated in *Dunn* v. *Broomfield,* 74 R. I. 27. It is different from that case only in the fact that in the *Dunn* case the employee's appeal from the decree authorizing discontinuance of payments, though pending before this court, was not heard together with the appeal of the employers and their insurance carrier from the decree adjudging them to be in contempt. But we think that the law therein stated is equally applicable to the instant case, where both appeals were argued at the same time.

The *Dunn* case was an appeal from a similar decree of the superior court adjudging the employers in contempt for failure to continue payments after the filing of an employee's appeal from a decree authorizing discontinuance of such payments. This court held that the provision in the compensation act that a claim of appeal shall suspend the operation of the decree appealed from refers to a petition for review, as in the instant case, as well as to one based on an original petition, and affirmed the decree adjudging the employers in contempt.

We have considered the petitioners' argument that the *Dunn* case should be reconsidered and overruled because of the possible hardship to them if they are compelled to continue payments until the appeal from the order of discontinuance is decided by this court and in the event that such appeal should be decided in their favor. But we are also cognizant of the fact that if the petitioners were

permitted to discontinue payments upon entry of the decree in the superior court before the appeal was finally determined, then in the event this court should not sustain the ruling of the trial justice the hardship upon the employee might be much greater than any which might be suffered by the petitioners. This court does not make the law but merely construes it, and such an argument would be more properly addressed to the legislative branch of the government than to this court.

We are of the opinion that in the instant case the decision of the trial justice holding petitioners in contempt for failing to continue payments in accordance with the terms of the preliminary agreement pending respondent's appeal was correct; and, since petitioners in their petition for review are seeking affirmative relief, we do not think we should pass upon the issue raised by them until it appears, by the entry of a proper order in the superior court, that they have purged themselves of such contempt in accordance with the terms of the decree appealed from.

The petitioners' appeal from the decree adjudging them in contempt is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings under that decree. Thereafter, if the petitioners purge themselves of contempt in accordance with such decree, the cause shall be returned to this court for disposition of the other appeal.

*Hinckley, Allen, Tillinghast & Wheeler, S. Everett Wilkins, Jr., Thomas J. Hogan,* for petitioner.

*William H. McSoley, Jr.,* for respondent.

JOHN JAMES DOTY *vs.* THELMA C. DOTY.

JUNE 25, 1948

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is a divorce case in which the respondent has claimed two separate appeals from different decrees of the superior court. One is an appeal from a decree changing the custody of Virginia Ann Doty, the parties' minor child, hereinafter called Virginia, and the other is an appeal from a decree adjudging the respondent in contempt for failure to produce the child in accordance with the order of the superior court.

It appears in evidence that on June 13, 1944 the petitioner obtained a decision for divorce from the respondent. At that time his circumstances were such that he could not personally provide a suitable home for Virginia, who was then four years old. Neither could he place her with his mother because of her remarriage following his father's death.

Furthermore, he was then about to enter the armed forces. In this situation he agreed with the respondent that Virginia should go to live with her maternal grandmother, Helen Cluff, in New Hampshire. The trial justice approved that arrangement and, with the consent of the petitioner, awarded custody of the child to the respondent upon that express condition which was incorporated in both the preliminary and final decrees for divorce. On this point the final decree, which was entered December 15, 1944, reads as follows: "That custody of the minor child born of said marriage, namely, Virginia Ann Doty be and is hereby awarded to the respondent, Thelma C. Doty upon the express condition that said minor child remain in the home of the grandmother, of said minor child, namely, Helen Cluff in the Town of Redstone, Carroll County, State of New Hampshire."

A few months after this arrangement was carried out the petitioner left Rhode Island for overseas service with the armed forces, while the respondent remained in Providence where she was employed. Helen Cluff, the grandmother, died in July 1945, whereupon Virginia went to live with the grandmother's sister, Maude Hatch, in Kennebunkport, Maine. Petitioner was discharged from the service in March 1946 and was remarried in March 1947, at which time he established a home in the town of Jamestown in this state. Shortly thereafter he visited Maude Hatch for the purpose of bringing the child back to Rhode Island, but he was induced to wait until the end of that school year. Following further delay in the matter, he again went to Maine and this time Mrs. Hatch informed him that Virginia was with her sister, Cora B. Maine, in New Hampshire; and when he went to Mrs. Maine's home he found that the child had been returned to Mrs. Hatch. He then filed a motion to amend the final decree by striking out the provision with reference to custody and praying that he be awarded custody of the child.

After a full hearing on the question thus raised the trial

justice granted the motion on the ground that in the circumstances the father was entitled to the custody of his child. He therefore directed that she be returned to him on or before August 9, 1947. A decree was thereafter entered in accordance with that decision, which decree gave respondent, who had not remarried and continued to be employed in Providence, the right "to see, visit with, have the company and companionship of said minor child at all reasonable times and that said minor child may visit with said respondent on holidays and vacations * * * ." Respondent's appeal from this decree is the first of her two appeals before us.

The evidence further shows that as Virginia was not returned to the petitioner in accordance with the decree just mentioned, he moved that the respondent be adjudged in contempt for her noncompliance therewith. Such motion was filed within the thirty days allowed by general laws 1938, chapter 541, §1, for claiming an appeal from the entry of a decree following the course of equity. Thereafter and before the thirty-day period expired the respondent duly claimed an appeal from the decree awarding custody to the petitioner. In this state of the record petitioner's motion to adjudge the respondent in contempt was heard by a justice of the superior court who granted the motion but provided that the respondent might purge herself of contempt by bringing Virginia to the Providence county courthouse and delivering her to the petitioner on August 26, 1947. The respondent duly appealed from this decree, which appeal is the second one for our determination.

The situation presented by the record before us is not the typical one where a father and mother, as between themselves, are claiming custody of their minor child. Here the mother, who is unable to provide a home with her for Virginia in Providence, seeks custody in order that she may allow the child to continue living with her grandaunt, Mrs. Hatch, in Maine, rather than to have Virginia

live with her father at his home in Jamestown. While the trial justice found that Mrs. Hatch's home and the care which she gave Virginia were above criticism, he also found that the home of the father and the surrounding conditions were adequate for her care and welfare. In the circumstances his judgment was that it would be more natural for Virginia to live with her father, and therefore he awarded custody to him with broad provision for the mother to see the child and enjoy her companionship, which provision the father should comply with so long as its execution would not be inconsistent with Virginia's welfare.

Respondent's contention that the trial justice awarded custody to the petitioner mainly because of the evidence in the divorce case is without merit as our examination of the transcript clearly shows otherwise. In this case the welfare of Virginia was of prime importance and all the evidence was directed to that end.

Respondent's further contention that custody should have been awarded to her because of the embarrassment and restraint to which she would be subjected if she were obliged to see Virginia at petitioner's home is not persuasive. The decree which gave custody to the petitioner is very broad in its terms with reference to the right of the respondent to see and have the child. It plainly permits the parties to make reasonable arrangements between themselves to avoid unnecessary embarrassment and unpleasantness, if they are sincerely concerned with the welfare of their child. Of course, the respondent must be given reasonable opportunity to see and have Virginia to herself under proper conditions in accordance with the terms of the decree hereinbefore quoted. Likewise, she must conduct herself so as to avoid future misunderstandings that might react unfavorably to Virginia's welfare. Both parties should keep in mind that their conduct with reference to the child continues open to the scrutiny of the court and that the terms of the decree under consideration may be altered, even to a change of custody, if necessity requires. There was no

error in granting petitioner's motion for a change of custody.

We will now consider respondent's appeal from the decree holding her in contempt for failure to produce Virginia at the appointed time. The question thus raised is one of law. General laws 1938, chap. 541, §1, provides that a party aggrieved by a final decree of the superior court in any proceeding following the course of equity may, within thirty days after the entry thereof, appeal to this court; and that upon the taking of such appeal all proceedings under the decree appealed from "shall be stayed * * * ." It clearly appears in the record before us that the respondent duly perfected her appeal from the decree for custody within the statutory period.

The pertinent provision of §1 expressly grants to a party aggrieved by a final decree of the superior court the right to appeal to this court within thirty days from the entry of such decree by filing a claim of appeal and a statement of the reasons of appeal in the office of the clerk of the superior court. During that period the superior court may not compel an aggrieved party to comply with the decree. If within that time an appeal is properly taken by such party all proceedings under the decree appealed from are stayed and the superior court becomes powerless to enforce its terms. However, that court may still enter certain orders under §4 for the protection of the rights of the parties pending the determination of the appeal, subject however to the power of this court, on motion or other proper proceeding, to annul or modify such orders. If, on the other hand, no appeal is claimed and perfected in accordance with the provisions of §1 then and in such case the decree becomes properly enforceable by appropriate action of the superior court.

Unless the statute is so construed confusion undoubtedly will result, as is shown by the action of the superior court in the instant case when it held the respondent in contempt for failure to comply with its final decree for change of

custody before the thirty-day appeal period had expired, from which decree the respondent duly perfected her appeal within that period. It was therefore error to adjudge the respondent in contempt.

The respondent's appeal from the decree relating to custody is denied and dismissed, and such decree is affirmed. Her appeal from the decree holding her in contempt is sustained, and such decree is reversed. The cause is remanded to the superior court for further proceedings.

*Harry Feigelman, Alexander G. Teitz,* for petitioner.

*Goldberg & Goldberg, Philip B. Goldberg, Leo M. Goldberg, George Ajootian,* for respondent.